208 F.3d 1085 (9th Cir. 2000)
 KATHLEEN KLEM, ROSEMARY KNOX,PATRICIA CHRISTMAN, and LINDA SHADWELL, on behalf of themselves and others similarly situated,Plaintiffs-Appellees,
v.
COUNTY OF SANTA CLARA,CALIFORNIA,Defendant-Appellant.
HAROLD ASSENZA, JOHN CARLSON,SHARON COOLEY, NANCY S.BENNETT, DOUG WILLIS, ALFONSO M. HACKETT, ROBERT CARGILL, ARMENIA CHAVEZ, DIANA ORTIZ-LOPEZ, ZONIA BEECHER, AMANDO CABLAS, KATHRYN CANTER, MARY CLESI, ANGELIKA COLUNGA, RAUL COLUNGA, ANTHONY CONIGLIARO, JUNE CRAMBLIT, JOAN CUNNINGHA,OPINION ARTHUR DEMATTEI, WAYNE DORN,KAREN DUPREE, STEVEN FAST,KRISTINE FISHER, RUTH FRANKLIN,HARRY GIRETTI, SHIRLEY GODBOUT,PAUL GOOGE, ANDY GRIMLEY, JON HACKLEY, RENEE HUF, THOMAS IRION, DALE JENKINS, BETTY KONG,LAWRENCE LAMBERT, LORRAINE LEIPOLD, CARLOS LINDSEY, MANUEL MARTINEZ, IDA MATSON, PHILLIP MAYER, MICHAEL MERRITT, JIM MIDDLETON, JOAQUIN MONTANO,MARIE MORELAND, JERRY MORGAN,JOYCE MUKUNO, CHARLES MYERS,JOCELYN MYERS, NORMA PAYNE,MARCIA PETERSON, ROBERT RIORDAN, KARL SCHMUCKI, PETER SCHNEIDER, RONALD SMITH, ILLENE STAHR, ROBIN SURMONT, ANN TAMURA, LORI THOMAS, HELEN TINDALL, JACK TONEY, ROSITA TORRES, HAMISI WHITE, PETE WILSON, DONALD WOOD, RALPH CANO, DONNA FAIRCHILD, LUANN HAHN, GWEN KEEGAN, THOMAS KENNEDY, BARBARA MCGUINESS, JOYCE PANATTUNI, RICHARD RAPACCHIETTE, ALYSON SANCHEZ,FERNANDO VALCARCEL, BENJAMIN A. AGUILAR, SUSAN KELLEY, and CONNIE SYMONS,Plaintiffs-Appellees,
v.
COUNTY OF SANTA CLARA and SANTA CLARA BOARD OF SUPERVISORS,Defendants-Appellants.
 No. 98-16844
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 4, 1999
Filed April 3, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: Linda A. Tripoli and Felicia R. Reid, Curiale Dellaverson Hirschfeld Kelly & Kraemer, San Francisco, California, for the defendants-appellants.
 Lynn Rossman Faris, Leonard, Carder, Nathan, Zuckerman, Ross, Chin & Remar, Oakland, California, and Christopher E. Platten and Carol L. Koenig, Wylie, McBride, Jesinger, Sure & Platten, San Jose, California, for the plaintiffs-appellees.
 Paul L. Frieden, United States Department of Labor, Washington, D.C., and Thomas A. Woodley, Mulholland & Hickey, Washington, D.C., for the amici curiae.
 Appeals from the United States District Court for the Northern District of California; Ronald M. Whyte, District Judge, Presiding. D.C. Nos. CV 95-20454-RMW. CV-91-20674-RMW
 Before: Mary M. Schroeder, Robert R. Beezer, and Susan P. Graber, Circuit Judges.
 GRABER, Circuit Judge:
 
 
 1
 This appeal arises under the Fair Labor Standards Act (FLSA), 29 U.S.C. S 201 et seq. Plaintiffs, who are managers and registered nurses employed by defendant County of Santa Clara, filed actions seeking overtime pay under the FLSA. Defendant moved for summary judgment, arguing that it could correct its failures to comply with the relevant administrative rules through the regulatory "window of correction." The district court issued an order denying the motion and granting Plaintiffs' cross-motion for summary judgment and certified its order for interlocutory appeal under 28 U.S.C. S 1292(b). Defendant appealed, contending that the district court had erred in denying its motion, and this court permitted the appeal. For the reasons that follow, we affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Two related groups of plaintiffs brought FLSA actions. The Klem plaintiffs are registered nurses who are or were employed by Defendant. In October 1991, they filed a complaint seeking a declaratory judgment that Defendant had violated the FLSA by improperly denying them overtime compensation. The Assenza plaintiffs are managers who are or were employed by Defendant. They filed a complaint seeking overtime compensation under the FLSA in December 1994.
 
 
 3
 Defendant employs about 14,000 workers and classifies approximately 5,300 of them as executive, administrative, or professional employees, who are exempt from the overtime provisions of the FLSA. See 29 U.S.C. S 213(a)(1). Plaintiffs were classified as exempt employees at all relevant times.
 
 
 4
 Section A-25-300 of the Santa Clara County Ordinance Code authorizes the County to discipline its employees for cause through, among other things, unpaid suspensions of up to 30 days. That provision of the Code does not distinguish between exempt and nonexempt employees; all are subject to disciplinary suspensions. During the six-year period for which Defendant provided records, it imposed 53 disciplinary suspensions, of durations other than one full workweek, on employees whom it classified as exempt.
 
 
 5
 On April 1, 1996, the district court granted summary judgment for Plaintiffs on the issue of Defendant's liability under the FLSA. The court concluded that Defendant improperly had suspended purportedly exempt employees for periods of less than one workweek, in violation of Department of Labor regulations implementing the FLSA. Accordingly, the court concluded, the County's classification of Plaintiffs and other similarly situated employees as exempt was improper, and Plaintiffs were entitled to receive overtime compensation for the period beginning September 6, 1991.
 
 
 6
 On May 21, 1997, Defendant issued a "policy change" concerning disciplinary suspensions of employees that it classified as exempt. Under the new policy, exempt employees are not subject to disciplinary suspensions of less than one full workweek. The County then reimbursed the exempt employees whom it improperly had suspended, for wages that they had lost during their suspensions.
 
 
 7
 In a motion for summary judgment filed in August 1997, Defendant sought reconsideration of the district court's order of April 1, 1996. Defendant contended that, in the light of the Supreme Court's decision in Auer v. Robbins, 519 U.S. 452 (1997), it could remedy its improper suspensions through the regulatory "window of correction" and thereby retain exempt status for its employees. On that basis, Defendant argued, it was entitled to summary judgment on the issue of its liability for overtime compensation. The Secretary of Labor filed a brief as amicus curiae, opposing Defendant's motion for summary judgment and arguing that Defendant's interpretation of the window-of-correction rule was contrary to the Secretary's interpretation. Plaintiffs filed a cross-motion for summary judgment.
 
 
 8
 The district court denied Defendant's motion for summary judgment and granted Plaintiffs' motion. First, the court found that "the evidence establishes that the County engaged in a pattern of improper disciplinary deductions pursuant to its charter and ordinance." The court then deferred to the Secretary's interpretation of the relevant rules and concluded that, under that interpretation, Defendant could not avail itself of the window of correction to remedy its longstanding practice of suspending allegedly exempt employees in violation of the FLSA. The court certified its order for interlocutory appeal under 28 U.S.C. S 1292(b). This timely appeal followed.
 
 STANDARD OF REVIEW
 
 9
 We review de novo the denial or grant of a motion for summary judgment. See IDK, Inc. v. County of Clark , 836 F.2d 1185, 1189 (9th Cir. 1988). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998).
 
 
 10
 The Secretary of Labor's interpretation of her own regulations is entitled to deference and is controlling unless "plainly erroneous or inconsistent with the regulation." Auer, 519 U.S. at 461 (citations and internal quotation marks omitted). The Secretary's interpretation is entitled to deference even when, as here, that interpretation comes to the court in the form of a legal brief. See id. at 462.
 
 
 11
 In addressing questions under the FLSA, this court is "mindful of the directive that [the statute ] is to be liberally construed to apply to the furthest reaches consistent with Congressional direction." Biggs v. Wilson, 1 F.3d 1537, 1539 (9th Cir. 1993). To that end, "FLSA exemptions are to be `narrowly construed against . . . employers' and are to be withheld except as to persons `plainly and unmistakably within their terms and spirit.' " Auer, 519 U.S. at 462 (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)); see also Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983) (construing overtime exemption for "any employee employed as a seaman"). An employer who claims an exemption from the FLSA bears the burden of demonstrating that the exemption applies. See id.
 
 THE FAIR LABOR STANDARDS ACT
 I. Statutory and Regulatory Background
 
 12
 Under the FLSA, employers generally must pay their employees at least one and one-half times their regular rate of pay for hours worked in excess of 40 in a week. See 29 U.S.C. S 207(a)(1). Employees who are employed in executive, administrative, or professional capacities are exempt from that overtime requirement. See 29 U.S.C. S 213(a)(1). The Secretary of Labor is authorized to define by rule the scope of those exemptions. See id.
 
 
 13
 Under the Secretary's rules, three tests must be satisfied for an employee to be considered an exempt executive, professional, or administrative employee: The "duties" test, see 29 C.F.R. S 541.1; the "salary level" test, see 29 C.F.R. S 541.1(f); and the "salary basis" test, see 29 C.F.R. S 541.118. Only the "salary basis" test is at issue in this case.
 
 
 14
 An employee is considered to be paid on a salaried basis if "he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. S 541.118(a). In order to qualify for exempt status, "the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked," but "need not be paid for any workweek in which he performs no work." Id. The rule makes an exception for "[p]enalties imposed in good faith for infractions of safety rules of major significance," 29 C.F.R. S 541.118(a)(5), but other reductions in pay for disciplinary violations, such as the suspensions at issue in this case, are impermissible "reduction[s] because of variations of the quality or quantity of the work performed" when imposed on exempt employees, Auer, 519 U.S. at 456.
 
 
 15
 In Auer, the Supreme Court interpreted the "salary basis" regulation and discussed the circumstances in which an employee's pay is considered "subject to" impermissible reductions in violation of the regulation. In that case, the plaintiffs were senior police officers who sought overtime compensation under the FLSA. The plaintiffs had been classified by their department as exempt executive, administrative, or professional employees. They argued, however, that the department's classification was improper, because the conditions of their employment violated the "salary basis" test. Specifically, they argued that they were "subject to" impermissible disciplinary suspensions, because such suspensions were provided for in the department's employee manual, even though they could point to only one incident in which an allegedly exempt employee actually had been disciplined in that manner.
 
 
 16
 In rejecting the plaintiffs' argument, the Supreme Court deferred to the Secretary of Labor's interpretation of the "salary basis" regulations. Under that interpretation, the mere theoretical possibility that exempt employees could be suspended improperly is not enough to render those employees "subject to" improper deductions in pay in violation of the regulation. Id. at 461-62. Rather, employees are "subject to" improper deductions when they are covered by a disciplinary policy that permits such deductions "as a practical matter." Id. at 461. The court concluded: "That standard is met .. . if there is either an actual practice of making such deductions or an employment policy that creates a significant likelihood of such deductions." Id. (internal quotation marks omitted). In Auer, the plaintiffs were not subject to improper deductions, because their employment manual was too vague to communicate a significant likelihood of improper suspensions, and because they could show no "actual practice" of improper deductions; the record revealed only one such deduction, made "under unusual circumstances." Id. at 462.
 
 
 17
 The "salary basis" test also includes a window of correction through which an employer may remedy certain improper deductions from an exempt employee's salary. That window of correction is established by 29 C.F.R. S 541.118(a)(6), which provides:
 
 
 18
 The effect of making a deduction which is not per mitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not per mitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.
 
 
 19
 In Auer, the Supreme Court concluded that the defendant could correct one improper disciplinary suspension under the window-of-correction rule. The court rejected the plaintiffs' argument that the window applied only when the improper deduction was inadvertent, concluding instead that the rule provides for correction of both inadvertent and intentional deductions. See Auer, 519 U.S. at 463. The court also concluded, consistent with the Secretary's interpretation of the rule, that reimbursement for an improper deduction need not be immediate. See id. at 464.
 
 II. The Secretary of Labor's Interpretation
 
 20
 As noted, the Secretary's interpretation of the window-ofcorrection rule is set out in a brief to this court. Under that interpretation, the window of correction is available only to employers that have demonstrated the "objective intention" to pay their employees on a salaried basis. When an employer has demonstrated such an objective intention, the window of correction is available to cure inadvertent or isolated violations of the "salary basis" regulations. However, when an employer has not demonstrated that intention, it cannot, after the fact, use the window of correction to bring itself into compliance with the "salary basis" regulations and thereby turn nonsalaried employees into salaried employees.
 
 
 21
 Further, under the Secretary's interpretation, an employer "that engages in a practice of making impermissible deductions in its employees' pay, or has a policy that effectively communicates to its employees that such deductions will be made, necessarily has no intention of paying its employees on a `salary basis.' " The question is not whether an employer has the subjective intention that its employees be exempt from the FLSA's overtime provisions. Rather, it is whether the employer has evinced the objective intention to pay its employees on a salaried basis as defined in the Secretary's regulations. When an employer has a practice and policy of noncompliance with those regulations, the Secretary reasons, it cannot demonstrate an intention to comply with the regulations and to pay its employees on a salaried basis. Under those circumstances, the employer cannot treat its employees as exempt; nor can it use the window of correction to comply retroactively with the regulations and thereby obtain an exemption for a class of employees that it actually never paid on a salaried basis.
 
 
 22
 As textual support for its interpretation, the Secretary focuses particularly on the second and third sentences of the window-of-correction rule: "Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such
 
 
 23
 deductions were being made." 29 C.F.R. S 541.118(a)(6) (emphasis added). In the Secretary's view, that passage establishes that an employer's intention to pay on a salaried basis is a prerequisite to its treating an employee as exempt. An employer's lack of intention to pay on a salaried basis may be shown by deductions when no work is available, as provided in the text of the rule, or by a practice of other impermissible deductions, as in this case. Accord Auer, 519 U.S. at 463 ("The Secretary's regulations provide that if deductions which are inconsistent with the salary-basis test . . . are made in circumstances indicating that `there was no intention to pay the employee on a salary basis,' the exemption from the FLSA is `[not] applicable to him during the entire period when such deductions were being made.' ").
 
 
 24
 The rule's fourth sentence is facially broad: "On the other hand, where a deduction not permitted by these interpretations . . . is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee . . . and promises to comply in the future." 29 C.F.R. S 541.118(a)(6). According to the Secretary, that sentence applies only to employers who objectively intended to pay their employees on a salaried basis in the first place. That interpretation is proper, the Secretary urges, when the window-of-correction provision is read in the context of the "salary basis" regulations as a whole. To interpret the rule otherwise would allow an employer to treat its employees as exempt for overtime purposes while, at the same time, intentionally failing to comply with the "salary basis " rule. In the event that its employees sued for overtime pay, such an employer simply could use the window of correction to comply retroactively with the salaried-basis requirements. According to the Secretary, such a result would render the "salary basis" rule "essentially meaningless" and run counter to the rule that FLSA exemptions are to be construed narrowly.
 
 III. Defendant's Arguments
 
 25
 Defendant contends that the Secretary's interpretation of the window-of-correction rule is inconsistent with the text of the rule, with Auer, and with other cases interpreting the rule. Accordingly, Defendant argues, the Secretary's interpretation is not entitled to deference and the district court erred in relying on it. Defendant also argues that the district court's order is factually incorrect and results in a "windfall " to Plaintiffs.
 
 A. Textual Arguments
 
 26
 According to Defendant, the Secretary's interpretation is improper because it restricts the availability of the window of correction to isolated and occasional violations of the "salary basis" regulations. Defendant argues that the fourth sentence of 29 C.F.R. S 541.118(a)(6), which allows for use of the window of correction "where a deduction . . . is made for reasons other than lack of work," establishes that there is no limit on the number of intentional deductions that may be remedied through the window of correction, even if those deductions constitute a pattern or practice, so long as they are not made because of lack of work. Therefore, Defendant argues, the Secretary's contrary interpretation imports additional limitations into the rule that are inconsistent with the rule's text.
 
 
 27
 Defendant also argues that the Secretary's interpretation improperly focuses on an employer's intention to pay on a salaried basis. According to Defendant, an employer's intention is at issue only when the employer makes deductions from pay for lack of work. Defendant points to the second sentence of 29 C.F.R. S 541.118(a)(6): "Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis." According to Defendant, that sentence establishes that only deductions made for lack of work can evidence a lack of intention to pay employees on a salaried basis. Intentional deductions made for other reasons -no matter how frequent or how plainly contrary to the "salary basis" rule -cannot, Defendant argues, establish an employer's intention not to pay a salary.
 
 
 28
 To prevail on its textual arguments, Defendant must do more than propose a reasonable interpretation of the windowof-correction rule that is contrary to the Secretary's interpretation. It must demonstrate that the Secretary's interpretation is plainly erroneous or inconsistent with the rule. Accordingly, the question here is whether the Secretary's interpretation is justified when considered together with the text of 29 C.F.R. S 541.118, taken in context. Because of the high degree ofdeference owing to the Secretary's interpretation of her own rules, we need not conclude that her interpretation is the only reasonable construction of that rule, or even the best one. It merely must be sufficiently connected to the rule's text to be consistent with the rule.
 
 
 29
 We conclude that the Secretary's interpretation is consistent with the text of the window-of-correction rule and, accordingly, is entitled to deference. We agree with the Secretary's contention that the second and third sentences of the rule provide some textual support for her interpretation.
 
 
 30
 Further support is found in the rule's fourth sentence, which provides that, when an improper deduction "is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost" if the employer, through the window of correction, reimburses the improperly suspended employee and promises to comply in the future. 29 C.F.R. S 541.118(a)(6) (emphasis added). The key word in that passage is "lost." For an exemption to be capable of being "lost," it first must have been obtained. The window of correction, therefore, is available to employers that have exempt employees, because those are the only employers who can lose exemptions. An employer that does not pay on a salaried basis does not have exempt employees. The window of correction is unavailable to such an employer, because the window operates to protect employers from losing exemptions or, in other words, to preserve existing exemptions.
 
 
 31
 Here, as the Secretary argues, Defendant did not have any exempt employees, despite its subjective belief that it did. Exempt executive, administrative, and professional employees are paid on a salaried basis. Employees are paid on a salaried basis when they regularly receive a predetermined amount of compensation that is not subject to reduction because of variations in the quality or quantity of work performed. See 29 C.F.R. S 541.118(a). Defendant's allegedly exempt employees received compensation that was subject to reductions because of variations in quality and quantity of work. See Auer, 519 U.S. at 461 (stating that employees are "subject to" improper deductions when there is an actual practice of making such deductions). Because Defendant's employees were subject to such improper reductions in compensation, they were not paid on a salaried basis. Because they were not paid on a salaried basis, they were not exempt. Accordingly, Defendant had no exemptions to lose and, because the window of correction is available only to protect employers from losing exemptions, Defendant could not use the window to remedy its improper suspensions.
 
 
 32
 The Secretary's interpretation, while not compelled, is consistent with the rule's focus on protecting employers that have exempt workers from losing those exemptions. Defendant's arguments do not establish that the Secretary's interpretation is contrary to the text and purpose of the relevant regulations. Accordingly, the Secretary's interpretation is entitled to deference, and the district court did not err in relying on it.
 
 B. Arguments Based on Precedent
 
 33
 Defendant contends, however, that the Secretary's interpretation is foreclosed by Auer and by precedent from this court and also is inconsistent with decisions from other circuit and district courts. Defendant first argues that the Secretary's interpretation is inconsistent with Auer because, under that interpretation, "the window is unavailable for intentional salary basis test violations." That argument misstates the Secretary's interpretation. Nowhere does the Secretary state that intentional violations cannot be remedied through the window of correction; nor does the district court's order in this case so state. To the contrary, both the Secretary and the district court acknowledge that intentional violations can be rectified through the window of correction, so long as those violations do not amount to a pattern or practice of violations demonstrating an intention not to pay employees on a salaried basis. Accordingly, Defendant's argument that the Secretary's interpretation "effectively requires that all deductions be inadvertent" is not well taken.
 
 
 34
 Defendant also argues that the Secretary's interpretation and the district court's order are inconsistent with Paresi v. City of Portland, 182 F.3d 665 (9th Cir. 1999). In Paresi, we upheld a summary judgment in favor of the City of Portland. The plaintiffs there were City employees who had sought overtime compensation. They argued that they were not exempt because the City had, on two occasions, improperly suspended allegedly exempt employees for less than one full workweek. The plaintiffs argued that the City could not rectify those improper suspensions under the window-ofcorrection rule, because the City had engaged in a pattern of improper deductions.
 
 
 35
 We held that the City could correct the allegedly improper deductions under the window-of-correction rule. See id. at 668. We reasoned that the record showed no "pattern of deductions": "The facts found by the district court -coming down to two actual instances of arguably impermissible deductions -would not sustain a finding of such a pattern or policy." Id.
 
 
 36
 The opinion went on to state that, even if there had been evidence of such a pattern, we still would have rejected the plaintiffs' argument: "In any event, the text of the regulation contains no such limitation . . . . The deductions made and corrected by the City were made for disciplinary reasons, which are `reasons other than lack of work' and, thus, are covered by the window of correction." Id. Defendant argues that the court's latter statement is an "alternative holding" that we must follow. As support for that proposition, Defendant cites Woods v. Interstate Realty Co., 337 U.S. 535, 537 (1949); English v. United States, 42 F.3d 473, 485 (9th Cir. 1994) (Browning, J., concurring); and Dragor Shipping Corp. v. Union Tank Car Co., 371 F.2d 722, 726 (9th Cir. 1967). None of those cases supports Defendant's view of Paresi. Woods, English, and Dragor Shipping all discuss situations in which a court set out two alternative grounds for a decision, both of which were presented on the facts of the case. In Paresi, by contrast, we made a factual determination that disposed fully of the plaintiffs' legal argument; the additional comment was unnecessary to the holding. The discussion in Paresi focused exclusively on the wording of the regulation and did not address the issue before us, which is whether the Secretary of Labor's interpretation should be given deference. The Secretary of Labor did not file an amicus brief in Paresi, and this court did not have before it a sufficient indication of what the Secretary's interpretation was. See Paresi, 182 F.3d at 668 n.2.
 
 
 37
 Defendant also argues that the district court's order in this case is in conflict with other post-Auer decisions interpreting the window-of-correction rule. Defendant directs this court to several cases addressing the rule, including Childers v. City of Eugene, 120 F.3d 944 (9th Cir. 1997); DiGiore v. Ryan, 172 F.3d 454, 465 (7th Cir. 1999); Davis v. City of Hollywood, 120 F.3d 1178 (11th Cir. 1997); and Balgowan v. New Jersey, 115 F.3d 214, 219 (3d Cir. 1997). However, none of the circuit court cases to which Defendant refers involved a pattern or practice of improper deductions, such as the district court found in this case. To the extent that those cases address the question whether the window of correction is available to cure an employer's actual practice of improper disciplinary suspensions, they do so in dicta. Further, none of the cited cases addresses the Secretary of Labor's interpretation of the window-of-correction rule.
 
 
 38
 There appears to be only one district court opinion, other than the order in this case, in which the Secretary of Labor appeared as an amicus to address the scope of the window-ofcorrection rule. In Belcherv. Shoney's, Inc., 30 F. Supp. 2d 1010, 1021-22 (D. Tenn. 1998), the district court concluded that the defendant had an actual practice of impermissible disciplinary suspensions. Relying on the Secretary's interpretation, the court concluded that the window was not available to cure the defendant's pattern of intentional violations. See id. at 1024; see also Hoffman v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997) (deferring to the Secretary's interpretation, which the court gleaned from amicus briefs in Auer and from a 1991 DOL opinion letter).
 
 C. Factual Arguments
 
 39
 Defendant also proposes several reasons why the district court's order is factually incorrect or is inconsistent with other cases. The crux of Defendant's factual arguments is its contention that "the evidence in this case is insufficient to establish the county's lack of intent to treat Plaintiffs on a salary basis." The difficulty with that contention is that the burden is on Defendant to demonstrate its entitlement to an exemption from the overtime provisions of the FLSA. Plaintiffs are not required to prove Defendant's lack of intention to pay salaries in order to be entitled to overtime compensation.
 
 
 40
 Defendant's specific factual arguments also lack force. First, Defendant points out that few of the plaintiffs in this case were subject to improper disciplinary suspensions and that most of the 53 suspensions at issue were imposed on employees who are not parties to these actions. Although Defendant is correct, the point is of only marginal relevance. The question here is whether Defendant's improper suspensions of those employees whom it classified as exempt demonstrate that it lacked the intent to pay such employees on a salaried basis. All improper suspensions of employees in Plaintiffs' classification are relevant to answering that question.
 
 
 41
 Defendant next argues that the district court's order is inconsistent factually with other "salary basis" cases. Defendant's argument on this point proceeds as follows: (1) The district court in this case found 53 improper suspensions among approximately 5,300 exempt employees over a sixyear period; (2) thus, only one percent of Defendant's exempt employees were suspended improperly; (3) in other cases, courts have allowed employers to use the window of correction even when a higher percentage of exempt employees were suspended improperly (in Paresi, for example, the court found two improper suspensions in a group of 62 exempt employees, which amounts to 3.8 percent); and (4) the facts in this case, therefore, are indistinct from other cases in which courts allowed employers to cure improper deductions through the window of correction.
 
 
 42
 Defendant's argument is unpersuasive. The fact that other courts faced with other facts have allowed employers to use the window does not mean that the district court erred in this case. First, as noted, none of the cases to which Defendant refers involved a pattern or practice of improper deductions or a discussion of the Secretary of Labor's interpretation of the window-of-correction rule. Further, the district court was not bound by those cases; the availability of the window of correction "depend[s] upon the facts in the particular case." 29 C.F.R. S 541.118(a)(6). Here, the district court concluded that Defendant's 53 deductions constituted a pattern and properly deferred to the Secretary's interpretation of the relevant rules. That was not error, even though other circuit courts have found that two deductions (Paresi), or four deductions (Davis), or five deductions (DiGiore) from smaller groups of workers could be cured through the window of correction.
 
 
 43
 Finally, Defendant argues that interpreting the window-ofcorrection rule as the district court and the Secretary have would grant a "windfall" to Plaintiffs and would expose Defendant to unanticipated liability for overtime payments. We are not persuaded. Plaintiffs are entitled to overtime compensation and have been made to wait for years to receive the fullamount of their wages. In no sense does payment of longoverdue wages represent a "windfall."
 
 
 44
 AFFIRMED.