ther proceedings consistent with this opinion.

Harold YOURMAN, Ralph Bishop, William H. Dworkin, Frederick Ewald, John L. Hendrickson, Richard Krepela, Robert P. McCarthy, Frank Meyer, Anthony Punzi, Ronald L. Savitt, on behalf of themselves & all other employees similarly situated, Ronald A. Brow, Plaintiffs–Appellants,

v.

Rudolph GIULIANI, as Mayor of the City of New York, Board of Education of the City School District of the City of New York, New York City Health & Hospitals Corporation, Defendants–Appellees.

Docket No. 99–9310.

United States Court of Appeals, Second Circuit.

Argued: May 3, 2000

Decided: Oct. 2, 2000

**126**

Joan Stern Kiok, New York City (Robert N. Felix, New York City, of counsel), for Appellants.

Marilyn Richter, Assistant Corporation Counsel, City of New York, New York City (Michael D. Hess, Corporation Counsel of the City of New York, Leonard Koerner, Assistant Corporation Counsel, City of New York, New York City, of counsel), for Appellees.

Henry L. Solano, Solicitor of Labor, Steven J. Mandel, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, United States Department of Labor, Washington, D.C., for Amicus Curiae The Secretary of Labor.

Before: MESKILL, CABRANES and KATZMANN, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiffs-appellants represent a class of individuals employed by the City of New York, the New York City Health and Hospitals Corporation (HHC), and the Board of Education of the City School District of the City of New York (BOE). In April 1991 they filed this lawsuit in the United States District Court for the Southern District of New York, Preska, *J.*, against defendants-appellees the Mayor of the City of New York, the HHC and the BOE seeking unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA). On cross-motions for summary judgment, the court held that the plaintiffs were not entitled to overtime, finding that they were "executive, administrative, or professional" employees exempt from the overtime pay requirement under the "salary basis" test promulgated by the Secretary of Labor (Secretary). After hearing oral argument in this case, we requested an *amicus* brief from the Department of Labor (DOL). Having reviewed the *amicus* brief and the parties' responses to it, we largely adopt the Secretary's interpretation of the salary basis test, and we vacate the district court's judgment and remand for further proceedings.

## BACKGROUND

The facts in this case are presented thoroughly in the district court's opinions. *See Yourman v. Dinkins*, 826 F.Supp. 736 (S.D.N.Y.1993) (*Yourman I*); *see also Yourman v. Giuliani*, 1999 WL 799803 (S.D.N.Y. Oct.7, 1999) (*Yourman II*). We assume familiarity with those opinions and recount the facts here only to the extent necessary to resolve this appeal.

Employees of the City, the HHC and the BOE are subject to written time and leave regulations that govern minimum work weeks, annual leave allowances, sick leave allowances, etc. Various scenarios exist under these regulations permitting pay deductions from employee compensation. For example, employees are subject to pay deductions in instances where they have been absent from work but have exhausted their leave allowances or have not received approval for use of leave allowances. Employees are also subject to discipline, including suspension without pay, for infractions such as insubordination, abuse of sick leave, refusal to report for drug testing, conduct unbecoming, theft of

agency property, and misuse of an agency car.

In *Yourman I*, the district court granted summary judgment to the employees, appellants here, finding that they were not exempt under the FLSA because they were not compensated on a salary basis. *See Yourman I*, 826 F.Supp. at 740–44. In particular, the district court found that the time and leave regulations were inconsistent with the DOL regulation defining "salary basis," because (1) the employees were subject to disciplinary deductions for infractions of safety rules not of major significance, *see id.* at 741 (citing 29 C.F.R. § 541.118(a)(5)), and (2) the employees might have had to take leave without pay to testify in court or to satisfy military service obligations, *see id.* at 742 (citing 29 C.F.R. § 541.118(a)(4)). The court concluded that the employees were not exempt from FLSA coverage whether or not they had suffered any actual deductions from pay. *See id.* at 742–44 (relying in part on *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615–17 (2d Cir.1991)). In a separate opinion, the court held that the employees were entitled to liquidated damages and back overtime pay, *see Yourman v. Dinkins*, 865 F.Supp. 154 (S.D.N.Y. 1994), and judgment was entered accordingly.

The defendants appealed, and we affirmed. *See Yourman v. Dinkins*, 84 F.3d 655 (2d Cir.1996) (per curiam). Although we recognized a division of authority as to whether actual deductions from pay were required in order to find that the salary basis test was not met, we "agree[d] with the conclusions reached by Judge Preska in her comprehensive opinions, and [we left] the ultimate resolution of the statutory dispute to the Supreme Court or the Congress." *Id.* at 656.

The Supreme Court granted *certiorari* and vacated and remanded in light of *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137

L.Ed.2d 79 (1997). In *Auer*, the Court held that the salary basis test is not satisfied only "if there is either an actual practice of making [pay] deductions or an employment policy that creates a significant likelihood of [pay] deductions," *id.* at 461, 117 S.Ct. 905 (internal quotation marks omitted), adopting the interpretation espoused by the Secretary of Labor as *amicus curiae* in that action. We then remanded the case to the district court.

On remand, the district court denied the employees' motion to reinstate the judgment. Instead, the court granted summary judgment to the employers, *i.e.*, the City, the BOE and the HHC. *See Yourman II*, 1999 WL 799803, at *18. The employees appealed, and, after oral argument, we requested an *amicus* brief from the DOL. Having received the DOL's comprehensive response and the parties' letter briefs in reply, we vacate the district court's judgment and remand for further proceedings.

## DISCUSSION

The Fair Labor Standards Act entitles employees to time-and-a-half overtime for hours worked in excess of forty hours per week, *see* 29 U.S.C. § 207(a)(1), except for those employees "employed in a bona fide executive, administrative, or professional capacity," *see id.* § 213(a)(1). The Secretary of Labor has "broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees." *See Auer*, 519 U.S. at 456, 117 S.Ct. 905 (alterations in original) (quoting 29 U.S.C. § 213(a)(1)).

Regulations promulgated by the Secretary provide that an employee is employed in a "bona fide executive, administrative, or professional" capacity only if he or she is compensated on a "salary basis."[1] *See id.* at 455, 117 S.Ct. 905 (citing 29 C.F.R. §§ 541.1(f), 541.2(e), 541.3(e)). "An em-

---

1. Administrative and professional employees may also be compensated on a "fee basis." *See* 29 C.F.R. §§ 541.2(e), 541.3(e); *see also* *id.* § 541.313. However, none of the parties here claims that the appellants were paid on a fee basis.

ployee will be considered to be paid 'on a salary basis' ... if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). Deductions from pay in less than one week increments for disciplinary violations are inconsistent with compensation on a salary basis. *See Auer*, 519 U.S. at 456, 117 S.Ct. 905; *see also* 29 C.F.R. § 541.118(a) ("[T]he employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked."). "The Secretary is of the view that employees whose pay is adjusted for disciplinary reasons do not deserve exempt status because ... true 'executive, administrative, or professional' employees are not 'disciplined' by piecemeal deductions from their pay." *See Auer*, 519 U.S. at 456, 117 S.Ct. 905.

The regulation allows for a "window of correction," *see Martin*, 949 F.2d at 616, so that when "a deduction not permitted by [the regulation] is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." 29 C.F.R. § 541.118(a)(6). However, the window of correction is not available if an employer "engages in a practice of making impermissible deductions in its employees' pay, or has a policy that effectively communicates to its employees that such deductions will be made." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1091 (9th Cir.2000) (internal quotation marks omitted) (detailing Secretary's interpretation of the window of correction rule); *see also Martin*, 949 F.2d at 616–17 (denying "window of correction" where employer had policy of docking pay for missing work).

To interpret the rule otherwise would allow an employer to treat its employees as exempt for overtime purposes while, at the same time, intentionally failing to comply with the "salary basis" rule. In the event that its employees sued for overtime pay, such an employer simply could use the window of correction to comply retroactively with the salaried-basis requirements. According to the Secretary, such a result would render the "salary basis" rule "essentially meaningless" and run counter to the rule that FLSA exemptions are to be construed narrowly.

*Klem*, 208 F.3d at 1092.

In *Auer*, the Supreme Court held that the Secretary's interpretation of the salary basis test is "controlling unless plainly erroneous or inconsistent with the regulation[s]." *Auer*, 519 U.S. at 461, 117 S.Ct. 905 (internal quotation marks omitted); *see also Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 1663, 146 L.Ed.2d 621 (2000) (noting that "*Auer* deference is warranted only when the language of the regulation is ambiguous"). Therefore the Court adopted the Secretary's understanding, expressed in an *amicus* brief, that employee compensation is "subject to reduction" only "if there is either an actual practice of making [pay] deductions or an employment policy that creates a significant likelihood of [pay] deductions," *id.* (internal quotation marks omitted).

Thus, in reviewing the district court's decision to grant summary judgment, we must consider whether the appellants have shown either an employment policy creating a "significant likelihood" of pay deductions or an "actual practice" by the employers of making pay deductions.

I. *Employment Policy Creating Significant Likelihood of Deductions*

The district court found no genuine issue of material fact as to the existence of an employment policy creating a "significant likelihood" of impermissible pay deductions. *See Yourman II*, 1999 WL 799803, at *6–8. The court explained that the employers' written policies either did

not "contain[ ] rules applicable only to managers" or did not "effectively communicate that [pay] deductions 'would in fact be made in specified circumstances.' " *Id.* at *7 (citing *Ahern v. County of Nassau,* 118 F.3d 118, 121–22 (2d Cir.1997)). We agree.

█ "A finding of 'significant likelihood' pursuant to *Auer* requires the existence of a 'clear and particularized policy—one which effectively communicates that deductions *will be* made in specified circumstances.' " *Ahern,* 118 F.3d at 121 (quoting *Auer,* 519 U.S. at 461, 117 S.Ct. 905). Even though the *Ahern* plaintiffs "definitively showed that their employment manual [permitted] the relevant deductions . . . [t]hey did not demonstrate . . . that such deductions would in fact be made in specified circumstances." *Id.* at 121–22. Therefore, we held the showing to be inadequate as a matter of law. *See id.* at 122.

Likewise, the appellants here point to admissions by the employers that managerial employees were subject to disciplinary deductions and that, at least in rare instances, such deductions were made. Even assuming those facts to be true, the appellants have shown only that such deductions were permitted, not that they would "in fact be made in specified circumstances." Therefore, the district court properly granted summary judgment on this issue.

II. *Actual Practice Of Impermissible Deductions*

█ The more complex question is whether the appellants have shown, sufficient to avoid summary judgment, the existence of an "actual practice" of making impermissible pay deductions. The district court held that they had not. *See Yourman II,* 1999 WL 799803, at *8–*17. Although the appellants alleged at least 148 actual disciplinary deductions, the court found that "[t]his overstates the number of actual deductions for a variety of reasons." *Id.* at *9. First, the court held that, with respect to the City, the

existence of any "actual practice" would have to be determined on an agency-by-agency basis. *See id.* at *4–*6. Therefore, deductions imposed by City agencies not employing any of the appellants, *i.e.,* the "non-*Yourman* agencies," could not be included in the total number of deductions. *See id.* at *9. Second, the court held that any deductions imposed prior to April 1989 were barred by the statute of limitations and could not be used to show an "actual practice." *See id.* Third, the court held that each imposition of a fine, even if imposed as multiple deductions, "reflects one decision to impose discipline based on a single course of misconduct" and, therefore, counted as only a single pay deduction. *Id.*

Having thus framed its analysis, the court considered, for each City agency, the BOE and the HHC, whether there was an actual practice of pay deductions. Of the forty-eight City agencies, only fifteen agencies employed one or more of the appellants, and only seven of those were "alleged to have actually used suspensions or fines as a form of discipline for misconduct of managers within the relevant time period." *Id.* Of the seven agencies, the court found that one had imposed no improper deductions and that six had imposed one or two impermissible deductions over the relevant time period. *See id.* at *9–*13. The court, citing *Auer,* held that one or two deductions did not constitute an actual practice and, therefore, permitted each agency to utilize the window of correction and cure the impermissible deductions by reimbursing the affected employees for such deductions. *See id.* In the alternative, the court noted that if all the City agencies were viewed as one entity, "there would be twelve deductions out of a workforce of 1,814 managers, roughly 0.7%" and found "that number insufficient to establish an actual practice." *Id.* at *13 (footnote omitted).

Turning to the BOE, the court found only one impermissible deduction. *See id.* at *13–*14. Therefore, the court held that

no actual practice of impermissible deductions existed and allowed the BOE to cure the impermissible deduction. *See id.*

Finally, the court found four impermissible deductions imposed by the HHC. However, the court noted that "out of 3,708 HHC managers, four deductions constitute only 0.1%. This is not sufficient to constitute a practice of deductions." *Id.* at *15. Therefore, the court also permitted the HHC to cure the impermissible deductions. *See id.*

We disagree with the district court's analysis in several respects. First and foremost, the existence *vel non* of an "actual practice" of imposing pay deductions cannot be decided by the simple expedient of dividing the number of impermissible deductions by the number of managerial employees. Second, the court applied the wrong standard in holding that the existence of an actual practice was to be determined on an agency-by-agency basis. Third, the court incorrectly excluded pay deductions imposed outside of the statute of limitations period. Each of these issues is addressed in greater detail below.

### A. What Constitutes An Actual Practice?

The purpose of the salary basis test is to distinguish "true" executive, administrative, or professional employees from non-exempt employees, *i.e.,* employees who may be disciplined "by piecemeal deductions from ... pay." *See Auer,* 519 U.S. at 456, 117 S.Ct. 905. Actual deductions from pay are neither necessary for an employee to be found non-exempt, *see id.* at 461, 117 S.Ct. 905 (rejecting "wooden requirement" of such deductions), nor are they sufficient, *see* 29 C.F.R. § 541.118(a)(6) (allowing employers to correct "inadvertent" deductions). However, an employer that engages in an actual practice of making impermissible deductions "necessarily has no intention of paying its employees on a 'salary basis,'" *Klem,* 208 F.3d at 1091 (internal quotation marks omitted), and, therefore, cannot

claim that its employees are exempt from the overtime pay requirements.

Thus, in determining what constitutes an "actual practice" of pay deductions, we bear in mind the object of the inquiry: whether the employer's practices reflect an "objective intention" to pay its employees on a salaried basis. *See id.* That question cannot be answered by simply dividing the number of impermissible pay deductions by the number of managerial employees, but necessarily involves consideration of additional factors such as the number of times that other forms of discipline are imposed, the number of employee infractions warranting discipline, the existence of policies favoring or disfavoring pay deductions, the process by which sanctions are determined, and the degree of discretion held by the disciplining authority. *Cf. Auer,* 519 U.S. at 462, 117 S.Ct. 905 (taking note of "unusual circumstances" surrounding improper pay deduction).

The Secretary of Labor takes the same position in its *amicus* brief, stating that "[t]here can be no bright-line test for determining what constitutes an 'actual practice' of making impermissible deductions" and suggesting various factors (included among those listed above) that may be pertinent to this "factual determination ... best left to the trial court." In addition to the deference we owe to the DOL's interpretation of its own regulation, *see id.* at 461, 117 S.Ct. 905, we agree with that interpretation. Compare two examples: (1) an employer that regularly docks the pay of managers who come to work five hours late, and (2) an employer that only sporadically docks the pay of managers who come to work five minutes late. The first employer surely would have more of an "actual practice" than the second employer, even though the penalties imposed by the second employer could far outnumber the penalties imposed by the first. A mechanical comparison of the number of deductions with the number of managerial employees simply cannot capture the fact

specific inquiry into an employer's intent, as reflected in its practice of imposing deductions from pay, and inevitably will produce inconsistent results. *See, e. g., Klem*, 208 F.3d at 1095 (finding actual practice despite argument that number of pay deductions per manager was smaller than in other cases where no actual practice was found); *Yourman II*, 1999 WL 799803, at *8 ("[C]ourts in the post-*Auer* era have varied as to how many actual deductions are necessary to constitute an actual practice.") (citing cases).

On remand, the district court should weigh the factors listed above, in addition to any others relevant to the existence of an actual practice, in determining whether either party is entitled to summary judgment. It is worth noting that this more nuanced inquiry renders somewhat irrelevant a dispute that was argued both below and on appeal: whether a single disciplinary fine that is imposed as multiple pay deductions counts as a single pay deduction or as multiple pay deductions. The district court held that such fines should be treated as single deductions, *see id.* at *9, and the DOL agrees. To hold otherwise would "penalize[ ] defendants for an accommodation made to the individual employees, that is, spreading a single fine over a number of installments." *Id.* In other words, an employer's decision to provide such an accommodation, standing alone, does not reflect an "objective intention" not to pay its employees on a salaried basis. Nevertheless, the number of impermissible pay deductions is only one factor to consider among many, and it ultimately may not matter whether a fine is viewed as a single deduction or as multiple deductions once the district court properly weighs all the circumstances under which such fines are, or are not, imposed.

## B. *Who Is The Employer?*

Next, the district court erred by deciding, as a matter of law, that its analysis must proceed on an agency-by-agency basis rather than on a citywide basis. In

holding that each agency must be considered separately, *see id.* at *4–*6, the district court in essence granted summary judgment to the City on the employees' claim that the City itself engaged in an actual practice of imposing pay deductions, without properly applying the usual standards governing summary judgment.

Drawing all factual inferences in favor of the party opposing summary judgment, *i.e.*, the City employees, *see Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994), there indeed may be a genuine issue of material fact as to the existence of an actual citywide practice of imposing impermissible pay deductions. The most telling evidence in this regard is the 1993 memorandum directed to all City agencies by the City Personnel Director after the decision in *Yourman I* in favor of the employees. The memorandum set forth detailed guidelines intended to mandate compliance with the FLSA and, in particular, to ensure that managerial employees were not subject to pay deductions that would render them non-exempt. *Id.* at *4–*5. The City employees also pointed to an earlier, 1986 memorandum that discussed compliance with the FLSA and was addressed to "all agency heads," as well as to evidence showing that certain time and leave rules were applied uniformly to all City managers and that all agency heads were required to report to the Commissioner of Citywide Administrative Services. *Id.* This evidence suggests that there may have been citywide policies permitting pay deductions and that the agency heads were subject to supervision with respect to their disciplinary authority, both of which are factors that may tend to show the existence of an actual citywide practice of pay deductions.

The district court, however, pointed out that "responsibility for employee discipline is vested in the head of each City agency" and that some agencies "have their own policies concerning codes of conduct and/or discipline." *Id.* at *5. The district court concluded that "each agency must be con-

sidered separately because of the different rules applicable and the authority of each individual agency head over discipline in his or her agency." *Id.* at *6. Although the district court's analysis shows, perhaps, that each City agency has sufficient autonomy, organizational structure, and governmental character to be treated as an employer under the FLSA, *cf.* United States Census Bureau, 1 *1997 Census of Governments: Government Organization*, at ix (1999) ("[T]o be counted as a government, any entity must possess .. : [e]xistence as an organized entity, governmental character, and substantial autonomy.") [hereinafter, *Census of Governments* ], it does not show that the City is incapable, as a matter of law, of also engaging in (or not engaging in) an actual practice of impermissible pay deductions.

The Secretary of Labor, in her *amicus* brief, states that the question of whether a municipal agency must be treated independently of the municipality in determining the existence of an actual practice "ultimately must be a case-by-case analysis," guided in large part by the *Census of Governments*. *Cf.* 29 C.F.R. §§ 553.102(b), 553.227(c), 825.108(c)(1) (relying on *Census of Governments* in various contexts); 52 Fed.Reg. 2012, 2019–20 (1987). Because the City agencies discussed by the district court are not viewed as separate entities in the *Census of Governments*, the DOL takes the position that those agencies cannot be treated independently. We do not agree. The DOL assumed, like the district court, that the appellants could proceed either against the City or against each City agency, but not, as a matter of law, against both. That assumption is flawed, and the appellants may offer to show an actual practice of pay deductions by any entity that satisfies the FLSA definition of an "employer." *See* 29 U.S.C. § 203(d) (defining "employer"); *Torres–Lopez v. May*, 111 F.3d 633, 639–45 (9th Cir.1997) (permitting claims against joint employers under FLSA); *Antenor v. D & S Farms*, 88 F.3d 925, 929–38 (11th Cir.1996) (same).

Therefore, we remand for the district court to decide, in light of the relevant factors, whether the City employees have shown an actual practice by the City or by any relevant City agency sufficient to defeat summary judgment.

### C. *Which Pay Deductions Are Relevant?*

Having determined that the appellants may attempt to show a citywide practice of pay deductions, it follows that the district court should consider pay deductions imposed by any of the City agencies, not only pay deductions imposed by agencies employing one or more of the appellants. *See Klem*, 208 F.3d at 1095 ("All improper suspensions of employees in Plaintiffs' classification are relevant to answering that question.").

■ Furthermore, the district court must consider pay deductions dating back to April 1986, when the mandate issued in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which upheld the application of the FLSA to public sector employees. *See Davis v. City of Hollywood*, 120 F.3d 1178, 1180 (11th Cir.1997). Although the appellants may not recover damages or back pay for violations of the FLSA prior to the applicable limitations date, April 1, 1989, any impermissible deductions before that time nonetheless would have relevance to the existence of an actual practice of imposing such deductions.

As the Secretary's *amicus* brief notes, a somewhat analogous situation exists under Title VII, where we have explained that "statistical evidence of pre-Act discrimination can be probative of ongoing, post-Act discrimination." *Ottaviani v. State Univ. of New York at New Paltz*, 875 F.2d 365, 376 (2d Cir.1989) (citing *Bazemore v. Friday*, 478 U.S. 385, 402, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)); *see Sobel v. Yeshiva Univ.*, 839 F.2d 18, 30 (2d Cir.1988). A similar rationale applies here, so on re-

mand, the district court should not limit its consideration only to those pay deductions imposed during the limitations period in determining whether an actual practice exists. *See Klem v. County of Santa Clara,* 1998 WL 440425, \*2–\*5 (N.D.Cal. July 9, 1998) (finding actual practice of pay deductions based on pattern of disciplinary deductions that began prior to limitations period of one plaintiff class), *aff'd,* 208 F.3d 1085 (9th Cir.2000); *see also Davis,* 120 F.3d at 1180; *Childers v. City of Eugene,* 120 F.3d 944, 946 n. 2, 947 (9th Cir.1997).

## CONCLUSION

The district court's judgment is vacated, and the case is remanded for proceedings not inconsistent with this opinion.