In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2798

Vicky Whetsel,

Plaintiff-Appellant,

v.

Network Property Services, LLC,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 99-0674-C-F/D--Kennard P. Foster, Magistrate Judge.

Argued February 23, 2001--Decided March 29, 2001

Before Flaum, Chief Judge, and Ripple and Williams,
Circuit Judges.

Flaum, Chief Judge.  Vicky Whetsel appeals the
district court's grant of summary judgment in
favor of Network Property Services, LLC ("NPS")
on her claim under the Fair Labor Standards Act
("FLSA"). The court determined that regardless of
whether Whetsel was subject to a practice or
policy of improper deductions, NPS properly took
advantage of the regulatory window of correction.
Whetsel, joined by the Secretary of Labor
("Secretary") as amicus curiae, argues that the
window is not available where the employer
maintains a practice or policy of docking
employees' pay. For the reasons stated herein, we
reverse and remand.

I.  Background

Whetsel was an employee of NPS from January 3,
1996 to January 27, 1999. NPS considered her
employment to be exempt from the FLSA, and so she
was not paid overtime regardless of the number of
hours she worked. During the relevant time
period, NPS employed a total of sixteen salaried
employees that it claimed were exempt from the
overtime provisions of the FLSA.

Whetsel filed her complaint against NPS on May
11, 1999, seeking unpaid overtime, liquidated
damages, and attorney's fees. She claimed that
NPS had an unwritten policy based on "benefit

hours" which subjected her to the possibility of deductions in her pay for partial day absences. Under this policy, Whetsel claimed that NPS's employees were required to use benefit hours from a bank of time to cover absences of less than a day or else their pay would be docked. She also stated that NPS had in fact made at least eight partial day deductions to the salaries of four of its supposedly exempt employees, which amounted to a practice of docking. Because of the alleged practice and policy, Whetsel claimed her employment had not been covered by an exemption from the FLSA and thus she was owed for the overtime she had worked while at NPS.

NPS responded that Whetsel had been employed in an executive capacity and thus was not entitled to overtime pay. NPS further claimed that it regularly permitted salaried employees to take partial day absences after exhausting their allotted benefit hours without any reduction in pay, and did not have any policy of reducing salaried employees' pay for absences of under one day. The company noted that Whetsel herself repeatedly had been absent for less than a day for various reasons without ever having her pay reduced. NPS also claimed that the eight partial day deductions were irregular occurrences caused by unusual circumstances in each case.

On January 20, 2000, NPS circulated a memorandum to all of its employees stating that on "isolated occasions" in the past it had made partial day deductions to the salaries of exempt employees and that it had reimbursed those employees. The memorandum further stated that NPS's policy, both in the past and currently, is not to make deductions from the salaries of exempt employees for partial day absences regardless of whether the employee has any benefit time available. On the same day, NPS circulated another memorandum stating that any exempt employee who was leaving the company's employ would not have his or her pay reduced because of a negative balance in his or her available benefit hours account at the time employment was terminated.

On February 25, 2000, NPS moved for summary judgment, arguing that it did not have a practice or policy of improper deductions and that it had taken advantage of the regulatory window of correction through its January 20 memoranda and repayment to the four affected salaried employees. The district court, relying on DiGiore v. Ryan, 172 F.3d 454, 465 (7th Cir. 1999), stated that it did not need to determine whether NPS maintained such a practice or policy because, even if the company had done so, any violation of the FLSA was remedied through the window of

correction. On this basis, the district court granted summary judgment to NPS. Whetsel, aided by the Secretary, appeals.

II.  Discussion

A.  Structure of the FLSA and Regulations

The relevant legal background of the FLSA provisions and the Secretary's regulations on exemptions is set forth in DiGiore, 172 F.3d at 460-61, and so will not be repeated in depth here. NPS argues that it was exempt from the FLSA with respect to Whetsel's employment because she was an executive employee under 29 U.S.C. sec. 213(a)(1) and 29 C.F.R. sec. 541.1. Of the three requirements for an employee to qualify for the executive exemption, the parties agree that Whetsel's employment satisfied the supervisory and managerial aspects, and so the only issue is whether she was paid on a salary basis as required by 29 C.F.R. sec.sec. 541.1(f), 541.118(a).

Section 541.118(a) states that an employee is paid on a salary basis if he or she receives "a predetermined amount . . . of [ ] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." "This requirement, commonly referred to as the 'no-docking rule' prohibits employers from deducting an employee's pay based on partial day absences" and certain other forbidden reasons. DiGiore, 172 F.3d at 461. The "subject to" phrase in this regulation was interpreted in Auer v. Robbins, 519 U.S. 452, 461-62 (1997), where the Supreme Court held that an employee's compensation could be subject to reduction even if deductions were not taken from his or her salary. The "subject to" standard is met whenever the employer maintains (1) an actual practice of impermissible deductions or (2) a policy that creates a significant likelihood of deductions, so long as the policy is "clear and particularized" so as to "'effectively communicate[ ]' that deductions will be made in specified circumstances." Id.; see also DiGiore, 172 F.3d at 462-63. Whetsel admits that her own pay was never reduced for partial day absences, but argues that NPS maintained both a policy and a practice of impermissible deductions that made her subject to having her salary docked.

B.  Window of Correction

Section 541.118(a)(6), which establishes a window for correcting violations of the salary basis test, states:

The effect of making a deduction which is not permitted under these interpretations will depend

upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

The Secretary argues that this provision can aid an employer only if it first establishes that it objectively intended to pay its employees on a salary basis. Maintaining a policy or practice of improper deductions as defined in Auer shows that the employer lacked such an intention, and thus cannot use the window of correction. The Secretary claims that her construction of the regulation is entitled to controlling deference under the interpretive principles affirmed in Auer, 519 U.S. at 461. She further notes that two other circuits have adopted this interpretation in Yourman v. Giuliani, 229 F.3d 124, 128 (2d Cir. 2000) and Klem v. County of Santa Clara, 208 F.3d 1085, 1093 (9th Cir. 2000). Finally, the Secretary argues that any language in DiGiore that is contrary to her position is dicta and was made without the benefit of her considered views. Thus, the Secretary claims that the district court erred by applying the window without determining whether NPS had a policy or practice of docking.

NPS responds that the plain language of sec. 541.118(a)(6) states that the window is available to correct a practice or policy of impermissible deductions resulting from absences which are primarily within the control of the employee. NPS emphasizes the language of the second sentence and the beginning of the fourth sentence in supporting its argument. NPS also contends that this circuit answered the issue of the availability of the window of correction in an alternate holding of DiGiore, 172 F.3d at 465, which controls the outcome of this case.

Setting aside for the moment the potential effect of DiGiore as precedent, we defer to the Secretary's interpretation of the FLSA regulations unless her construction is "plainly erroneous or inconsistent with the regulation." Auer, 519 U.S. at 461 (internal quotation marks omitted); see also Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). The Supreme Court has recently emphasized that such deference is warranted only where the language at issue is ambiguous. Christensen v. Harris County, 529 U.S.

576, 588 (2000). If the regulation is ambiguous, then we defer to any reasonable construction by the Secretary, even though this interpretation might "not be the best or most natural one by grammatical or other standards." Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991).

1. Ambiguity.

We conclude that the regulation is ambiguous regarding whether the window is available to correct a policy or practice of docking. We rely on the fact that the regulation does not explicitly state that it is available to correct a policy or pattern of deductions, thus leaving open the question of whether it applies to those circumstances. By comparison, in recent cases where the Supreme Court has rejected an agency's construction of its own regulation, the Court has done so only where the proffered interpretation contradicts explicit language in the regulation. See Christensen, 529 U.S. at 587-88 (rejecting agency's attempt to read word "may" as mandatory rather than permissive); Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 356 (2000) (rejecting agency's argument that regulation that applied to "any" federally funded railroad crossing project affected only a subset of such projects).

NPS's argument for the clarity of the statute is based primarily on the second sentence, which precludes the possibility to correct only where deductions for lack of work are "generally made." The term "generally made" conveys a policy or practice of making deductions. NPS also relies on the fourth sentence, which states that if its conditions are complied with the exemption will be maintained if the deductions were "inadvertent, or for reasons other than lack of work" (emphasis added). This sentence might also be read as implying that deductions cannot be corrected only where the deduction was made deliberately and for lack of work. NPS contends that because the regulatory language singles out only practices or policies of deductions for lack of work for incorrigibility, the regulation implicitly indicates that any other kind of policy or practice can be corrected. While NPS's argument might have merit in other contexts, the canon of expressio unius est exclusio alterius has reduced force in the context of interpreting agency administered regulations and will not necessarily prevent the regulation from being considered ambiguous. See Pauley, 501 U.S. at 703; Cheney R.R. Co. v. ICC, 902 F.2d 66, 68-69 (D.C. Cir. 1990) (stating that expressio unius is "an especially feeble helper in an administrative setting" and that such reasoning "can rarely if ever" demonstrate unambiguity so as to prevent

deference to an agency's interpretation).

We also note that the issue facing this court has not been settled by Auer. Near the end of that opinion in a discussion of remedying a one-time reduction in pay, the Court held that the "plain language of the regulation sets out 'inadverten[ce]' and 'made for reasons other than lack of work' as alternative grounds permitting corrective action." 519 U.S. at 463 (alteration in original). This language could be read as supporting NPS's argument that the window is available for any deductions made for a reason other than lack of work, including a policy or practice of such deductions, but this would be a misunderstanding of the context in which the Court's statement appears. The Court had already determined that the employer's actions in that case did not amount to a practice or policy. Id. at 461-62. The section of Auer quoted above considered only whether a single impermissible deduction had to be unintentional to permit correction, and the Court held that it did not as long as it was made for reasons other than lack of work. Because this section of Auer was discussing only a single deduction, the Court did not confront the question of whether the window was available to ameliorate a practice or policy of deductions. See Klem, 208 F.3d at 1093-94.

2. Reasonableness.

Having determined that the regulation is ambiguous, we further hold that the Secretary's interpretation of the regulation is reasonable. The Secretary's construction, which focuses on objective intention, finds support in the second sentence of sec. 541.118(a)(6), whose language indicates that intention is the key to when the window is available. Similarly, the fourth sentence, which discusses when "the exemption will not be considered to have been lost" provides some modicum of support for the Secretary's interpretation. See Klem, 208 F.3d at 1093. Use of the word "lost" suggests that an employer must first establish that it was entitled to the exemption, which requires inter alia that the employer demonstrate it was paying its employees on a salary basis. According to the Secretary, this requires that the employer evince an objective intention to use a salary basis in compensating its employees. But where the employer maintained a policy or practice of improper deductions, the employer had no objective intention to pay on a salary basis, and thus had no exemption which could be "lost." Id.

We emphasize that the question is not which interpretation of sec. 541.118(a)(6) is best or

most natural, but only whether the Secretary's construction is reasonable. See Pauley, 501 U.S. at 702; Klem, 208 F.3d at 1092-93. While one may argue that the Secretary's interpretation is strained, it sufficiently comports with the language of the regulation so as not to be declared unreasonable or plainly erroneous.

3.  Precedent.

Returning to the question we set aside earlier in this opinion, we must determine what effect DiGiore has on the issue before us. In that opinion, we first concluded that the employer did not have a policy or practice of impermissible deductions. 172 F.3d at 463-65. We then stated that even if the employer's five improper deductions constituted a practice, the defendant employer would not be liable under the FLSA because it had complied with the last sentence of sec. 541.118(a)(6). Id. at 465. Whetsel and the Secretary argue that this latter statement is dicta and in any case was made without the benefit of the Secretary's views, while NPS claims that it is a binding alternative holding. NPS also notes certain other decisions that, like DiGiore, have appeared to hold that an employer who engages in a policy or practice of impermissible deductions can still use the window of correction, though none of these opinions considered the Secretary's interpretation. See, e.g., Davis v. City of Hollywood, 120 F.3d 1178, 1179-81 (11th Cir. 1997); Balgowan v. New Jersey, 115 F.3d 214, 219 (3d Cir. 1997).

While the difference between alternative holdings and dicta may not always be clear, see United States v. Crawley, 837 F.2d 291, 292-93 (7th Cir. 1988), the factors in this case point to the conclusion that the statement in DiGiore was an alternative holding. The passage was not a stray rumination on what the law would be in a hypothetical case. Rather, it was based on the actual facts before the court and was a sufficient ground standing alone to reach the court's decision. Also, the issue of whether a practice or policy could be corrected was apparently briefed before the DiGiore court/1 and no reason exists to believe that the statement was less carefully reasoned than it might otherwise have been. Finally, unlike the situation in Crawley, id. at 292, the statement in DiGiore does not conflict with other well-settled precedents. Admittedly, the statement was not strictly necessary to the disposition of the case because the holding that no practice or policy existed was sufficient, but this is true of all alternative holdings and yet these are still entitled to precedential weight. Neiman v.

Rudolf Wolff & Co., 619 F.2d 1189, 1193 n.4 (7th Cir. 1980).

Of course, even holdings can be altered. The DiGiore opinion does not mention the Secretary's view on the issue of when sec. 541.118(a)(6) is available. This suggests that the court might not have had that argument before it,/2 which is a sufficient reason for reconsidering this part of DiGiore and deferring to the Secretary's construction. Deference to administrative interpretations of regulations serves goals such as allocating policy questions to the political branches rather than the judiciary, permitting agencies to use their more detailed technical expertise, and letting the regulations be adapted to complex or changing circumstances. See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Pauley, 501 U.S. at 696-97; Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 151 (1991). Therefore, we have decided to overrule DiGiore to the extent that opinion alternatively holds that a practice of impermissible deductions can be remedied via the window of correction./3 The rest of DiGiore, including whether and when multiple deductions constitute a practice, 172 F.3d at 464-65, remains intact.

In summary, we hold that when an employer has a practice or policy of improper deductions as defined in Auer, the window of correction provided in 29 C.F.R. sec. 541.118(a)(6) is not available. In so doing, we join the other federal appellate courts that have been presented with the Secretary's views on this issue. See Yourman, 229 F.3d at 128; Klem, 208 F.3d at 1093. But see Anthony v. Iowa, No. 223 / 99-0515, 2001 WL 125169, at *3 (Iowa Feb. 14, 2001) (characterizing Klem as representing a minority view and holding that the plain language of sec. 541.118(a)(6) demonstrates that the window can be used whenever improper deductions were made for reasons other than lack of work, including to cure a practice or policy of improper disciplinary suspensions).

C. Remand

Both parties (though not the Secretary) ask this court either to decide the case or provide further guidance on the issue of what constitutes a practice or policy of improper deductions for the purposes of the salary basis test. While understanding the parties' desire, such actions would be inappropriate at this juncture. In part because the district court did not consider the practice and policy questions, the factual record is not sufficiently developed for us to render a decision. Instead, we are remanding to the

district court for further proceedings, which is the usual course where the incorrect legal test has been applied and the record does not clearly support judgment for one of the parties. Pullman-Standard v. Swint, 456 U.S. 273, 291-92 (1982); Nelson v. Monroe Reg'l Med. Ctr., 925 F.2d 1555, 1567 (7th Cir. 1991). We express no views on the practice and policy questions, and the district court on remand is free to entertain renewed summary judgment motions on these issues.

III.  Conclusion

In accordance with the views of the Secretary, we hold that 29 C.F.R. sec. 541.118(a)(6) cannot be used to remedy a practice or policy of improper deductions, as those terms are defined in Auer. The district court's analysis of this case was understandably truncated when it relied on an alternative holding of DiGiore, which we overrule, to avoid deciding whether NPS's actions amounted to a policy or practice. Because such an analysis is necessary to the disposition of the case, we are returning this dispute to the district court to settle the practice and policy questions on summary judgment or after trial. For the reasons stated herein, we Reverse and Remand for further proceedings consistent with this opinion.

/1 The issue of whether a practice could be corrected was raised in the district court in the DiGiore case, 987 F. Supp. 1045, 1055-56 (N.D. Ill. 1997), and the defendants presumably would have presented this potentially successful argument when facing this court. However, as noted below, the plaintiffs in that case might not have directed their arguments to this issue.

/2 NPS argues that the DiGiore panel did in fact consider the Secretary's argument because the Secretary's theory was explained in the district court's opinion, 987 F. Supp. at 1055-56. However, our opinion in DiGiore is devoid of any discussion of the Secretary's views or whether deference should be afforded to the Secretary's construction of the regulation. This suggests that the plaintiffs in DiGiore might have focused on other issues at the appellate level, such as the district court's principal holding that no actual practice or policy existed.

/3 In accordance with Circuit Rule 40(e), this opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing en banc on the question of overruling the alternative holding of DiGiore.