In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 01-60844

_____

KAREN MOORE, DERRICK L. NICHOLS, SHAWYNA FRANK,
GEORGE JAMES, EUGENE PAGE, MARY ANN FRYE, AND LISA A. GREEN,

Plaintiffs-Appellees-
Cross-Appellants,

VERSUS

HANNON FOOD SERVICE, INC.; ET AL.,

Defendants,

HANNON FOOD SERVICE, INC.; HANNON'S FOOD SERVICE, INC.;
HANNON'S FOOD SERVICE OF JACKSON, INC.;
AND HANNON'S FOOD SERVICE OF NATCHEZ, INC.,

Defendants-Appellants-
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Mississippi

_____

Before JONES, SMITH, and SILER,[*] Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Hannon Food Service, Inc.; Hannon's Food Service, Inc.; Hannon's Food Service of Jackson, Inc.; and Hannon's Food Service of Natchez, Inc. (collectively "Hannon") appeal a judgment as a matter of law ("j.m.l.") in this action brought pursuant to the Fair Labor Standards Act ("FLSA") awarding overtime benefits to a group of restaurant managers. Concluding that Hannon properly availed itself of the window of correction provided for at 29 C.F.R. § 541.118(a)(6), we reverse and render judgment in favor of defendants.

I.

A.

Hannon[1] owns various KFC restaurants throughout Mississippi. Plaintiffs were employed as restaurant managers at a salary of $300 per week plus a monthly bonus of 2% of the gross sales of the restaurant they managed. Hannon had a policy of deducting recurrent cash register shortages from the supervising manager's monthly bonus. In November 1997, Hannon began deducting these shortages from the managers' weekly salaries rather than their monthly bonuses, ostensibly to increase the managers' responsiveness to the

___

[*] Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

[1] The various Hannon companies named as defendants share common family ownership and make at least some management decisions in collaboration.

problem. This new practice resulted in a total of seventeen deductions across four of the plaintiffs; the other plaintiffs incurred no deductions. Salaries were not otherwise decreased for any reason.

Hannon made its legal counsel aware of the policy in February 1998, and counsel prepared a memorandum advising Hannon to discontinue the practice. Hannon promptly reverted to the previous practice of taking the deductions from the bonuses.

B.

Plaintiffs sued Hannon on May 28, 1998,[2] alleging violations of the FLSA, as amended, 29 U.S.C. § 216(b). On September 13, 2000, Hannon tendered plaintiffs the total amount of all improper deductions plus 8% interest from the dates of the deductions to September 18, 2000, the date then set for trial. Hannon later moved for summary judgment and filed a stipulation of facts to which all parties agreed. Plaintiffs filed a cross-motion for summary judgment. The district court granted j.m.l. for plaintiffs, finding that plaintiffs were not exempt *bona fide* executive employees for a four-month period, because they were "subject to" improper deductions within the meaning of C.F.R. § 541.118(a); the court rejected Hannon's argument that § 541.118(a)(6) allowed it to correct its error and maintain the exempt status of the employees. The court ordered Hannon to pay each plaintiff four months of

___

[2] The original complaint was filed by Karen Moore and Derrick Nichols against Hannon Food Service, Inc. The Third Amended Complaint, filed March 31, 1999, resulted in the current arrangement of parties.

overtime pay.

## II.

Hannon maintains that the district court should have applied the window of correction specified in 29 C.F.R. § 541.118(a)(6), which would have allowed Hannon to avoid liability because they reimbursed the improper deductions. Hannon contends that the plain language of the regulation, as interpreted by *Auer v. Robbins*, 519 U.S. 452, 463 (1997), requires the window of correction to be available for any deduction made for any reason other than lack of work.

Plaintiffs argue that application of the window of correction should be denied, because the deductions resulted from a policy that extended over four months. Plaintiffs specifically refer to *amicus curiae* briefs filed in other circuits on behalf of the Secretary of Labor interpreting § 541.118(a)(6) as being unavailable where a policy or practice underlies the improper deductions.[3]

Plaintiffs also cross-appeal the denial of overtime compensation before the time of the deduction, limited by the two-year limitations period, and the denial of liquidated damages. We review a j.m.l. *de novo*. *Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 336 (5th Cir. 1999).

## III.
### A.
Though the FLSA establishes a general rule that employers must pay their employees overtime compensation, executive, administrative, and professional employees are exempt. *See* 29 U.S.C. § 213(a)(1). The Secretary has broad authority to "define and delimit'" the scope of these exemptions. *Id.*; *see also Auer*, 519 U.S. at 456. Among the requirements for the exemption is the salary-basis test, 29 C.F.R. § 541.118,[4] under which the employee must receive "each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." § 541.118(a).

In some circumstances, an employee may maintain his exempt status, notwithstanding improper deductions, under the window of correction established by § 541.118(a)(6), which reads:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

---

[3] *See, e.g., Klem v. County of Santa Clara*, 208 F.3d 1085, 1091-92 (9th Cir. 2000); *Whetsel v. Network Prop. Servs.*, 246 F.3d 897, 900-01 (7th Cir. 2001).

[4] The duties test, *see* 29 C.F.R. § 541.1, and the salary level test, *see* 29 C.F.R. § 541.1(f), are not at issue here.

29 C.F.R. § 541.118(a)(6).

"The plain language of the regulation sets out 'inadvertence' and 'made for reasons other than lack of work' as *alternative* grounds permitting corrective action." *Auer*, 519 U.S. at 463. In *Auer*, the Court therefore allowed the defendant to correct an improper deduction resulting from a disciplinary suspension, even though it was intentional. *Id*.

The Court's interpretation of the window of correction in *Auer* informs our decision here. In *Auer*, however, the Court did not have the benefit of the interpretation of § 541.118(a)(6) proffered by the Secretary later in *Klem* and *Whetsel*, which, if adopted, would narrow the regulation from the Court's reading of broad applicability. Furthermore, *Auer* applied the window of correction to a single deduction, 519 U.S. at 463, and the Court had already determined that the plaintiff was not "subject to" deductions within the meaning of the salary-basis test, *id*. at 461-62. We therefore consider the applicability of the window of correction to the facts of this case in light of the Secretary's interpretation.

## B.

Though we did not have a brief from the Secretary in this case, the Ninth Circuit summarized her position to be that

the window of correction is available only to employers that have demonstrated the "objective intention" to pay their employees on a salaried basis. When an employer has demonstrated such an objective intention, the window of correction is available to cure inadvertent or isolated violations of the "salary basis" regulations. However, when an employer has not demonstrated that in-

tention, it cannot, after the fact, use the window of correction to bring itself into compliance with the "salary basis" regulations and thereby turn nonsalaried employees into salaried employees.

Further, under the Secretary's interpretation, an employer "that engages in a practice of making impermissible deductions in its employees' pay, or has a policy that effectively communicates to its employees that such deductions will be made, necessarily has no intention of paying its employees on a 'salary basis.'" The question is not whether an employer has the subjective intention that its employees be exempt from the FLSA's overtime provisions. Rather, it is whether the employer has evinced the objective intention to pay its employees on a salaried basis as defined in the Secretary's regulations. When an employer has a practice and policy of noncompliance with those regulations, the Secretary reasons, it cannot demonstrate an intention to comply with the regulations and to pay its employees on a salaried basis. Under those circumstances, the employer cannot treat its employees as exempt; nor can it use the window of correction to comply retroactively with the regulations and thereby obtain an exemption for a class of employees that it actually never paid on a salaried basis.

*Klem*, 208 F.3d at 1091. *Accord Whetsel*, 246 F.3d at 900-01.

## C.

Although we must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute, *Chevron U.S.A. Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 842-844 (1984), such deference is not appropriate for an interpretation of a regulation found in an *amicus curiae* brief.[5] In *Auer*, the Court addressed what weight should be afforded such interpretations of regulations. The Court considered an *amicus curiae* brief by the Secretary of Labor, filed at the request of the Court, that interpreted what it means to be "subject to" impermissible pay deductions under the salary-basis test created in § 541.118(a). *Auer*, 519 U.S. at 461.

The Secretary's interpretation required more than a theoretical possibility that exempt employees could incur deductions in pay; it required "either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Id.* The Court held "[b]ecause the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation." *Id.* (citations and internal quotation marks omitted). It found "[t]hat deferential standard [was] easily met" because the "critical phrase 'subject to' comfortably bears the meaning the Secretary assigns." *Id.*

In *Christensen*, the Court explicated when *Auer* deference is proper. There, petitioners challenged their employer's policy that prevented them from choosing to receive cash compensation for accrued compensatory time

in lieu of taking time off; they contended the policy contradicted 29 U.S.C. § 207(*o*)(5), "which requires that an employer reasonably accommodate employee requests to use compensatory time . . ." *Christensen*, 529 U.S. at 580-81. The Court considered an opinion letter[6] establishing the Secretary of Labor's interpretation of 29 C.F.R. § 553.23(a)(2), which "provides only that 'the agreement or understanding [between the employer and employee] may include other provisions governing the preservation, use, or cashing out of compensatory time so long as these provisions are consistent with [ § 207(*o*)]." *Id.* at 587-88. The opinion letter argued that § 207(*o*) precluded the employer from requiring employees to use their compensatory time.[7]

The Court declined to adopt the Secretary's interpretation of the regulation, holding that although "an agency's interpretation of its own regulation is entitled to deference . . . *Auer* deference is warranted only when the language of the regulation is ambiguous." *Id.* (citations omitted). "To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *Id.* Simply noting ambiguity in some part of the regulation is insufficient; there must be ambiguity with

---

[5] *See Christensen v. Harris County*, 529 U.S. 576, 587-89 (2000); *cf. Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 525 (5th Cir. 1999) ("Opinion letters, which are issued without . . . formal notice and rulemaking procedures . . . do not receive the same kind of *Chevron* deference as do administrative regulations.").

[6] The Secretary also appeared as *amicus curiae*. *Christensen*, 529 U.S. at 577.

[7] As the Court explained, the Secretary argued "that the express grant of control to employees to use compensatory time, subject to the limitation regarding undue disruptions of workplace operations, implies that all other methods of spending compensatory time are precluded." *Christensen*, 529 U.S. at 582-83.

respect to the specific question considered.[8] Absent ambiguity, "interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 [](1944), but only to the extent that those interpretations have the "power to persuade." *Id*. at 587.

### D.

Other circuits that have addressed the question whether the window of correction applies to all deductions made for reasons other than work have reached conflicting conclusions. Subsequent to *Auer*, the Eleventh Circuit had allowed the window of correction to an employer that made deductions for disciplinary reasons, then reimbursed the sums and adopted a written policy proscribing unpaid suspensions. The court did not comment on the Secretary's interpretation. *Davis v. City of Hollywood*, 120 F.3d 1178, 1180-81 (11th Cir. 1997) (quoting *Auer*, 519 U.S. at 463). The Third Circuit has indicated support for this position in *dictum*, but also has not considered specifically the Secretary's interpretation. *Balgowan v. New Jersey*, 115 F.3d 214, 219 (3d Cir. 1997) ("Accordingly, if any DOT engineer's pay had been docked, the 'window of corrections' exemption could have been used by the State to preserve that engineer's exempt status.").

The Ninth Circuit has held that the pattern or policy of deductions does prevent application of the "window of correction." *Klem*, 208 F.3d at 1094-96 (granting deference to the Secretary's interpretation and holding that contrary language in *Paresi v.* *City of Portland*, 182 F.3d 665, 668 (9th Cir. 1999), was *dictum*). The Ninth Circuit did not contend there was any ambiguity in the regulation requiring deference to the Secretary's interpretation.[9] The Seventh Circuit, citing *Klem*, also has adopted the Secretary's interpretation in *Whetsel*, 246 F.3d at 904, and did find the requisite ambiguity, *id*. at 901.[10] Relying heavily on *Whetsel* and

---

[8] *See Christensen*, 529 U.S. at 588 ("Because the regulation is not ambiguous on the issue of compelled compensatory time, *Auer* deference is unwarranted.").

[9] *Klem* was decided a month before *Christensen*. In later affirming *Klem*, *see Block v. City of Los Angeles*, 253 F.3d 410, 419-20 (9th Cir. 2001), the Ninth Circuit did not reconsider the *Klem* holding in light of *Christensen*'s requirements. Had it done so, it might have found that *Paresi* advised a different outcome.

*Paresi* held that because there was no "pattern of deductions" the city could correct the allegedly improper deductions under the window of correction rule. *See id*. at 668. The court continued to note that "[i]n any event, the text of the regulation contains no such limitation . . . . The deductions made and corrected by the City were made for disciplinary reasons, which are 'reasons other than lack of work' and, thus, are covered by the window of correction." *Id*. Though the "discussion in *Paresi* focused exclusively on the wording of the regulation and did not address . . . the Secretary of Labor's interpretation," *Klem*, 208 F.3d at 1094, *Paresi's* plain-language analysis arguably undermines any contention that the regulation is "ambiguous" such that it requires interpretation by the Secretary.

[10] Before *Whetsel*, the Seventh Circuit, like the Ninth Circuit, had also stated that the language of the regulation allowed correction despite a pattern or practice. *DiGiore v. Ryan*, 172 F.3d 454, 465 (7th Cir. 1997) ("Even if these five incidents rose to the level of frequent and, thus, constituted an actual practice by the SOS officials, the officers would still be exempt from the FLSA because the *(continued...)*

*Klem*, the Sixth Circuit reached the same conclusion. *Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 782-83 (6th Cir. 2001). The Second Circuit also adopted this position. *Yourman v. Giuliani*, 229 F.3d 124 (2d Cir. 2000).[11]

E.

We decline to extend *Auer* deference to the Secretary's interpretation, because § 541.118-(a)(6) is unambiguous. "[T]he plain language of the regulation sets out 'inadvertence' and 'made for reasons other than lack of work' as *alternative* grounds permitting corrective action." *Auer*, 519 U.S. at 463. Nothing in the regulation indicates that any further restriction on its application is implied or necessary.

As stated earlier, the *Klem* court did not try to determine whether the regulation is

---

[10](...continued)
SOS officials availed themselves of the regulatory 'window of correction.'"). Overruling *DiGiore*, the *Whetsel* court held that because *DiGiore* did not discuss the Secretary's interpretation, "the court might not have had that argument before it, which is a sufficient reason for reconsidering this part of *DiGiore* and deferring to the Secretary's construction." *Whetsel*, 246 F.3d at 903-04.

[11] It did so with little discussion, relying on *Klem* and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615-17 (2d Cir. 1991). Although *Martin* limits the exceptions applicability to "one-time or unintentional failure[s] to adhere to § 541.118(a)'s requirements," *id.* at 616, it predates *Auer* and does not address the "lack of work" clause. It does not appear that the defendant in *Martin* proffered an argument that the "lack of work" clause created a basis for correction; rather it relied on the argument that it had no policy that violated the statute. *Id.*

ambiguous.[12] In finding the requisite ambiguity, the *Whetsel* court relied "on the fact that the regulation does not explicitly state that it is available to correct a policy or pattern of deductions, thus leaving open the question of whether it applies to those circumstances." *Whetsel*, 246 F.3d at 901. The regulation, by

---

[12] The court did discuss the requirements of *Auer* that the proposed interpretation be neither "'plainly erroneous [n]or inconsistent with the regulation.'" *Klem*, 208 F.3d at 1089 (quoting *Auer*, 519 U.S. at 461). Rejecting the defendant's argument that "the Secretary's contrary interpretation imports additional limitations into the rule that are inconsistent with the rule's text," *id.* at 1092, the court stated that "we need not conclude that her interpretation is the only reasonable construction of that rule, or even the best one. It merely must be sufficiently connected to the rule's text to be consistent with the rule." *Id.* at 1093.

In searching for textual support, the court focused on the word "lost" in the fourth sentence:

> For an exemption to be capable of being "lost," it first must have been obtained. The window of correction, therefore, is available to employers that have exempt employees, because those are the only employers who can *lose* exemptions. An employer that does not pay on a salaried basis does not have exempt employees. The window of correction is unavailable to such an employer, because the window operates to protect employers from *losing* exemptions or, in other words, to preserve existing exemptions.

*Id.* This reasoning is circular. *Any* improper conduct *could* result in the employee not being exempt; the regulation creates exceptions where improper conduct can be rehabilitated. The general rule cannot inform the reader what the exceptions are; the text of the window of correction can.

7

its own terms, applies "where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work." This "ambiguity" is found only by contrasting the regulation's language with the Secretary's interpretation.

Under *Christensen*, this approach is backwards. The presence or lack of ambiguity in a regulation should be determined without reference to proposed interpretations; otherwise, a regulation will be considered "ambiguous" merely because its authors did not have the forethought expressly to contradict any creative contortion that may later be constructed to expand or prune its scope.

Responding to the argument that "because the regulatory language singles out only practices or policies of deductions for lack of work for incorrigibility, the regulation implicitly indicates that any other kind of policy or practice can be corrected," the Court in *Christensen* stated that "the canon of *expressio unius est exclusio alterius* has reduced force in the context of interpreting agency administered regulations and will not necessarily prevent the regulation from being considered ambiguous." *Id*. at 903 (citations omitted). *Expressio unius* has been defined by the Supreme Court as meaning that "expressing one item of an associated group or series excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 122 S. Ct. 2045, 2049 (2002) (quotation marks and alterations omitted). This is not truly a case of *expressio unius*, because the regulation is not silent as to deductions resulting from a policy or practice for reasons other than a lack of work; they are a subset of the second prong of

the exception.[13]

The argument that the regulation is ambiguous is unpersuasive. The Supreme Court has interpreted the regulation and noted no ambiguity. *Auer*, 519 U.S. 463. Having interpreted the statute, it applied it to the facts without pausing to ponder unstated exceptions. *Id*. at 463-64. The entire regulation reads coherently and plainly reaches any deductions made for reasons other than lack of work.

Absent ambiguity, the Secretary's interpretation is "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), "but only to the extent that those interpretations have the 'power to persuade,'" *see Christensen*, 529 U.S. at 587 (quoting *Skidmore*, 323 U.S. at 140). Though we afford the Secretary's interpretation its due respect under *Skidmore*,[14] it is insufficient to

---

[13] The *Whetsel* court implied that when a regulation makes reference to a particular class of conduct, the court should not necessarily find it unambiguous that the regulation intends to reach any particular subclass of that conduct. This unrealistically requires an agency to enumerate every conceivable subclass of a covered conduct in order to avoid having their regulations declared ambiguous. This is a needless burden to place on agencies. A genuine application of *expressio unius* would be to draw the presumption that there are no other types of improper deduction besides the two named that can be cured under the window of correction. And given that the regulation is an exception to a general rule that improper deductions will cause an employee to lose his exempt status, that conclusion would be appropriate.

[14] *Skidmore* requires only that we accord to an administrative judgment weight dependent "upon
(continued...)

8

overcome the interpretation's contradiction with the plain language of the regulation, which allows the window of correction to be invoked for the conduct at issue here.

## IV.

The district court erred in finding that the window of correction was unavailable in this case. Furthermore, the record demonstrates that Hannon properly availed itself of the exception. Hannon tendered plaintiffs the amount of all deductions plus interest five days before trial. Reimbursements may be made at any time to preserve the window of correction.[15] Moreover, Hannon has changed the offending policy. We therefore REVERSE and RENDER judgment in favor of defendants.[16]

---

[14](...continued)
the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140. Ultimately, *Skidmore* analysis is of limited value in interpreting regulations, given that it stops short of requiring deference and is likely to be invoked only when a court has already found the regulation to be unambiguous. *Cf. United States v. Mead Corp.*, 533 U.S. 218, 250 (2001) (Scalia, J., dissenting) ("[T]he rule of *Skidmore* deference is an empty truism and a trifling statement of the obvious: A judge should take into account the well-considered views of expert observers.").

[15] *Auer*, 519 U.S. 463-64 ("[I]n petitioners' view, reimbursement must be made immediately upon the discovery that an improper deduction was made. The language of the regulation, however, does not address the timing of reimbursement, and the Secretary's amicus brief informs us that he does not interpret it to require immediate payment. Respondents are entitled to preserve Guzy's exempt status by complying with the corrective provision in § 541.118(a)(6).").

[16] Because we conclude that Hannon properly availed itself of the window of correction, we do not reach the cross-appeal.