JOURNAL ENTRY AND OPINION
{¶ 1} In this appeal, plaintiffs-appellants, Jonathon Wilkes, Collin Schroeder, Federico Miranda, and Timothy Ratcliffe ("plaintiffs"), appeal from a decision of the Cuyahoga County Common Pleas Court that granted partial summary judgment in their favor against defendants-appellees, JJ Enterprises, Inc., Jock Moell, Jeff Smith, and John Doe ("JJ Enterprises"). Specifically, plaintiffs argue that the "window of correction" defense was not available to JJ Enterprises and that summary judgment should have been granted to them in toto. Upon review, we agree with the plaintiffs and reverse and remand this matter to the trial court to determine the amount of back pay and overtime wages owed to the plaintiffs. A review of the record reveals the following facts: Plaintiffs were employed as managers of various Marco's Pizza franchises owned and operated by JJ Enterprises. They were paid a salary plus a non-discretionary bonus if certain sales goals were met. The salaries of the plaintiffs were subject to reductions in pay. Specifically, the managers' manuals, issued by JJ Enterprises to all store managers, states that managers were subject to suspension without pay and that their salaries would be reduced for cash shortages.
 {¶ 2} On November 14, 2002, plaintiffs filed a complaint alleging that JJ Enterprises engaged in unlawful business practices under the Ohio Minimum Fair Wage Standard Law, codified at R.C. Chapter 4111, and the Fair Labor Standards Act ("FLSA"), codified at Section 201, Title 29, U.S. Code, when they failed to compensate the plaintiffs for overtime work and regularly deducted cash shortages from their salary. Plaintiffs sought damages for back pay and attorney fees. On April 10, 2003, plaintiffs moved for partial summary judgment as to liability, arguing that the policies and practices of JJ Enterprises as pertaining to the alleged unlawful deductions entitled them to overtime pay. The trial court granted the motion, in part, "pursuant to the principals [sic] set forth in Moore v. HannonFood Service, Inc. (2003), 317 F.3d 489."
 {¶ 3} On May 20, 2003, one week prior to trial, JJ Enterprises proffered settlement checks to plaintiffs, offering to pay for all of the reductions that had been made to plaintiffs. That same day, JJ Enterprises filed a motion seeking to dismiss plaintiffs' remaining claims for damages and attorney fees. Attached to the motion were the affidavits of Jock Moell and Mary Herzberg, in which they averred that JJ Enterprises corrected its policy regarding cash shortages and proffered payment to plaintiffs for the deductions taken under the "window of correction" defense authorized by Moore v. Hannon FoodService, Inc., supra. Plaintiffs opposed the motion arguing that JJ Enterprises was not entitled to avail itself of the "window of corrections" defense. On May 30, 2003, the trial court issued the following order:
 {¶ 4} "On 05/15/2003 the court granted plaintiffs' motion for partial summary judgment based on the principles set forth inMoore v. Hannon Food Service, Inc. (2003), 317 F.3d 489. In theMoore case the court held that the defendant corrected the violations of the Fair Labor Standards Act by tendering plaintiffs the amount of all improper deductions before trial. The court went on to say that reimbursements could be made at any time to preserve the window of correction. In the instant case [J J Enterprises] filed a notice of proffer of settlement and payment on 05/20/2003 and tendered payment to the plaintiffs. Thus, according to Moore, this disposes of all of the remaining issues. Final."
 {¶ 5} On June 27, 2003, plaintiffs appealed this order and raised three assignments of error.
 {¶ 6} On October 23, 2003, this Court dismissed plaintiffs' appeal for lack of a final appealable order since the trial court failed to address the issue of attorney fees. See Wilkes v. JJEnterprises, Inc., 2003-Ohio-5662, Cuyahoga App. No. 83086.
 {¶ 7} On March 16, 2004, the trial court entered the following order, after holding a hearing on attorney fees:
 {¶ 8} "This case was remanded by the Eighth District Court of Appeals on the issue of attorney fees. The Appellate Court held that this Court's granting partial summary judgment to plaintiffs as to liability was a finding of liability under the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standard Law. Both of these statutes provide for an award of reasonable attorney fees in the event of liability. Thus, plaintiffs' motion for attorney fees and costs, filed 01/05/2004, is granted. The starting point to determine attorney fees under the statutes is to compute a lodestar figure. The lodestar is the number of hours expended multiplied by the hourly rate. Turner v. ProgressiveCorporation (2000), 140 Ohio App.3d 112, 116. The lodestar usually presents reasonable attorney fees within the meaning of the statute. Id. The parties stipulated that $250 per hour was a reasonable rate for the attorneys to charge. Plaintiffs' attorneys spent 120.75 hours on this case. The hours included 5 depositions, summary judgment motions, status conferences, pretrial and settlement conferences. The lodestar equals 120.75 hours X $250. This comes to a total of $30,187.50. Costs equaled $468.75. This Court awards plaintiffs a total of $30,656.25."
 {¶ 9} Plaintiffs' appeal of the trial court's original order raises three assignments of error that focus on JJ Enterprises's ability to utilize the "window of correction" defense. Assignments of Error I and II will be addressed together, which state:
 {¶ 10} "I. Whether the trial court erred in permitting defendants to employ the "window of correction" defense just days before trial, when defendants had a clear policy of reduction, had engaged in a pattern and practice of reducing the salaries of plaintiffs for disciplinary infractions, and had regularly suspended plaintiffs without pay for disciplinary infractions.
 {¶ 11} "II. Whether the trial court erred when it refused to follow the Secretary of Labor's position that the window of correction does not apply when there is a clear and intentional policy of reduction."
 {¶ 12} We begin by noting that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v.Cleveland City Schools (1997), 122 Ohio App.3d 378; citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 13} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 14} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 15} With these principles in mind, we proceed to look at the trial court's grant of summary judgment.
 {¶ 16} The Secretary of Labor's interpretation of her own regulations is entitled to deference and is controlling unless "plainly erroneous or inconsistent with the regulation." Auer v.Robbins (1997), 519 U.S. 452 at 461. FLSA exemptions are to be narrowly construed against employers and the employer bears the burden of demonstrating that the exemption applies. Id. at 462.
 {¶ 17} The FLSA provides that all employees must be paid overtime compensation unless they are "employed in a bona fide executive, administrative, or professional capacity." See29 U.S.C. § 207 (a)(1) and § 213 (a)(1).
 {¶ 18} Under the FLSA regulations, an employee is considered "exempt" from receiving overtime compensation if the employee is paid on a "salary basis." This means that the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of the variations in the quality or quantity of the work performed." See 29 C.F.R. § 541.118(a).
 {¶ 19} The "salary basis" test includes a window of correction through which an employer may remedy certain improper deductions from an exempt employee's salary. That window of correction is established by 29 C.F.R. § 541.118(a)(6), which provides:
 {¶ 20} "The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case, the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future."
 {¶ 21} The Secretary of Labor has interpreted the "window of correction" defense as only being available to employers that have demonstrated an "objective intention" to pay their employees on a salaried basis. This means that an employee will not be considered exempt under the FLSA where the employer has an employment policy that creates a significant likelihood of disciplinary pay deductions or has an actual practice of making disciplinary deductions from the employees' pay. See Auer v.Robbins, supra at 461-63 (intentional violations can be rectified through the window of correction, so long as those violations do not amount to a pattern or practice of violations demonstrating an intention not to pay employees on a salaried basis.)
 {¶ 22} This view has been followed by numerous courts. SeeKlem v. County of Santa Clara, California (C.A.9, 2000),208 F.3d 1085 (Secretary's interpretation is entitled to high degree of deference and employer is not entitled to window of correction to remedy improper suspensions where there was an actual pattern or practice of improper behavior); Whetsel v. Network PropertyServices, LLC, (C.A.7, 2001), 246 F.3d 897, 901-04 (applying deference to the Secretary of Labor's interpretation of the window of correction and holding that the window of correction is not available to an employer with a policy or practice of improper deductions); Takacs v. Hahn Automotive Corp., (C.A.6, 2001), 246 F.3d 776, 782-83 (same); Martin v. Malcolm Pirnie,Inc., (C.A.2, 1991), 949 F.2d 611, 615-17 (denying "window of correction" where employer had policy of docking pay for missing work.)
 {¶ 23} We agree with the Secretary of Labor's interpretation of the window of correction and the analysis employed by the courts listed above. In doing so, we reject the analysis employed by the trial court, which relied solely on Moore v. Hannon FoodServ., supra, to find that JJ Enterprises was entitled to preserve the exempt status of the plaintiffs because it reimbursed them for the deductions actually taken from them. InMoore, the Fifth Circuit expressly rejected the reasoning of the Second, Sixth, Seventh, and Ninth Circuits, which deferred to the Secretary of Labor's interpretation, as stated above.
 {¶ 24} Here, the employer, JJ Enterprises was not entitled to the "window of correction" defense, since their disciplinary policy created a significant likelihood of pay deductions from managers due to disciplinary infractions, and since they had an actual practice of making such deductions from the managers. Specifically, JJ Enterprises had a clear, intentional, and ongoing policy of salary reduction. The management handbook explicitly states that management is responsible for cash shortages in the drawer and that any such shortages will be deducted from the manager's wages or bonus. (See pp. 4, 6, and 11 of the Reference Guide for Managers.) Next, JJ Enterprises had an actual practice of making pay deductions from its managers. Three of the plaintiffs testified that they experienced deductions in pay because of cash shortages, and one plaintiff testified that he was suspended twice without pay. Accordingly, JJ Enterprises' argument that the deductions were "inadvertent" is without merit.
 {¶ 25} Assignments of Error I and II are sustained.
 {¶ 26} "III. Whether the trial court erred when it permitted defendants to raise the affirmative defenses of `executive exemption' and `window of correction' for the first time in the opposition to plaintiffs' motion for partial summary judgment."
 {¶ 27} Our disposition of Assignments of Error I and II renders the plaintiffs' third assignment of error moot.
 {¶ 28} Cross-Assignment of Error I.[1] "The trial court erred in awarding attorney's fees under the Fair Labor Standards Act because there was no finding of liability under the Act and the appellees [plaintiffs] were not prevailing parties."
 {¶ 29} In their cross-assignment of error, JJ Enterprises argue that the trial court erred in awarding attorney fees to the plaintiffs because there was no finding of liability under the FLSA. Following our reasoning above, we disagree with JJ Enterprises. Since JJ Enterprises are not entitled to the "window of correction" defense, they are liable under the FLSA. Because plaintiffs are the prevailing parties, they are entitled to reasonable attorneys fees pursuant to29 U.S.C. § 216(b).[2]
 {¶ 30} However, in light of our decision to remand this case for further proceedings, it is premature to say what costs and attorney fees should be awarded to plaintiffs since they will probably incur further litigation expenses. See Ramos v. Rodak
(June 12, 1997), Cuyahoga App. Nos. 71390, 71217.
 {¶ 31} In light of the above reasoning, we reverse the award of attorney fees and affirm this cross-assignment of error.
 {¶ 32} Judgment reversed and remanded for further proceedings consistent with this opinion.
It is ordered that appellants recover of appellees their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and *Sweeney, J., Concur.
(*SITTING BY ASSIGNMENT: Judge James D. Sweeney, Retired, of the Eighth District Court of Appeals.)
[1] There were two separate appeals filed, which the court subsequently consolidated with agreement of counsel. See Motion No. 360273. Defendants-appellees listed this as Assignment of Error IV, which we have called "Cross-Assignment of Error I."
[2] 29 U.S.C. 216(b) provides as follows:
"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be * * *. The court in such actions shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."